IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

---

| | |
|---|---|
| HECNY SHIPPING LIMITED, | Case No. 1:25-cv-26028-JIC |
| *Plaintiff*, | "IN ADMIRALTY" |
| v. | |
| HYC LOGISTICS, INC., | |
| *Defendant*. | |

---

### DEFENDANT HYC LOGISTICS INC.'S
### MOTION TO VACATE *EX PARTE* MARITIME ATTACHMENT
### OR, IN THE ALTERNATIVE, TO REDUCE SECURITY

---

Defendant HYC Logistics, Inc. ("HYC"), by and through its undersigned counsel, and pursuant to Supplemental Rule E(4)(f), moves this Court for a prompt hearing followed by the issuance of relief GRANTING its Motion to Vacate the *ex parte* Maritime Attachment issued by HECNY Shipping Limited ("HECNY") against a January 6, 2026, judgment rendered in favor of HYC and against a third party, OJ Commerce, LLC (the "OJC Judgement" or the "Attached Property").  The OJC Judgment resulted from litigation, and a jury trial, before the United States District Court for the Western District of Tennessee[1]

HECNY makes its admiralty and maritime claim under Fed. R. Civ. P. 9(h) and 28 U.S.C. §1333, asserting a singular cause of action for "breach of maritime contract"[2]; however, the underlying contract between HECNY and HYC is <u>not</u> a maritime contract as required by Supplemental Rule B and, therefore, the maritime attachment is improper.

---

[1] *See*, HYC Logistics Inc. vs OJ Commerce, LLC, Case No. 2:23-cv-02050-TLP-tmp.
[2] See D.E. 1, Complaint at ¶¶ 36-43.

Despite what HECNY alleges in its Complaint, the services contemplated under the contract between HECNY and HYC – in fact - do not "directly pertain to maritime commerce, i.e. the handling of goods shipped by sea."[3] As such, even were HECNY to demonstrate that HYC breached the contract, HECNY has no viable or sustainable basis to impose a maritime attachment under admiralty jurisdiction.  As such, HECNY's Supplemental Rule B attachment, garnered against the OJC Judgement, is improper and must be VACATED.

In the alternative, HYC asserts that HECNY has improperly attached funds, well in excess of its alleged contractual claims, and to which it is not entitled.  In the alternative, HYC moves this Court, under Supplemental Rule E(6), to reduce the attachment amount, for good cause shown.

## PRELIMINARY STATEMENT

HECNY's claims arise from an alleged breach of a 2013 Non-Exclusive Agency Agreement (the "Agreement") between HECNY, a Hong Kong-based non-vessel operating common carrier ("NVOCC") and freight forwarder, and HYC, a Tennessee-based logistics company acting as HECNY's domestic (within the United States) agent.  Under the Agreement[4] between the parties, HYC and HECNY contracted for HYC to undertake the following on behalf of HECNY:

a) Collect the original HECNY bills of lading prior to releasing cargo (Clause 1.1);

b) Provide freight rate quotations within the guidelines that HECNY sets (Clause 1.1(b));

c) Provide sales, marketing, and customer service in accordance with HECNY's marketing strategy (Clause 1.1(c));

---

[3] Id.
[4] The Agreement includes a separate Letter of Indemnity, dated May 2, 2013, wherein HYC requested the use of non-negotiable sea waybills for certain shipments and agreed to indemnify HECNY for any claims stemming from such use.

2

      d)      Arrange for documentation and clearance of cargo in accordance with HECNY's procedures and government requirements (Clause 1.1(d));

      e)      Collecting and remitting to HECNY the appropriate freight, other charges and fees as required by HECNY (Clause 1.1(e));

      f)      Signing and issuing bills of lading on HECNY's behalf, where HECNY gives its prior written consent (Clause 1.1(f));

      g)      Handle the cargo that HECNY routes to HYC (Clause 1.2);

      h)      Act in accordance with HECNY's instructions (Clause 1.2.2);

      i)      Acknowledge tracers and communications received from HECNY within twenty-four hours (Clause 1.2.4);

      j)      Immediately report claims for loss or damage to HECNY with supporting documentation (Clause 1.2.5); and

      k)      Keep information and communication related to the Agreement confidential (Clause 7).

      The Agreement likewise proscribes HECNY's obligations to HYC to:

      a)      Provide shipping instructions (Clause 1.2.1);

      b)      Advise HYC the handling procedures and selling rate of the nominated cargo (Clause 1.2.2);

      c)      Send HYC pre-alerts for all nominated cargo with cargo documentation (Clause 1.2.3);

      d)      Acknowledge communications within 24 hours of receipt (Clause 1.2.4);

      e)      Calculate the profit/loss due to both parties (Clause 2.5);

      f)      Generate and send HYC monthly statements of account (Clause 4.5); and

      g)      Keep information and communication related to the Agreement confidential (Clause 7).

HECNY's "breach of maritime contract" claim alleges that HYC released cargo in the United States to non-party customer/purchasers without first securing from the non-party customer/purchasers, original bills of lading.  HECNY claims that HYC's release of the cargo has led to HECNY being named as a defendant in several Chinese lawsuits filed by several Chinese manufacturers/factories who contend that they are owed money by these non-party customer/purchasers.  HYC has never been provided actual verified proof of these lawsuits; rather, HECNY has submitted documents in Chinese, which it has translated, claiming to represent these lawsuits.

## LAW AND ARGUMENT

**A. There is no Valid Prima Facie Admiralty/Maritime Claim. The Agreement Is Not a Maritime Contract Under *Norfolk Southern Railway Co. v. Kirby.*  As such the attachment must be vacated.**

The United States Supreme Court in *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14 (2004), provides trial courts with clear parameters for the implication of admiralty jurisdiction. Only when a dispute arises out of an agreement whose "principal objective is maritime transportation" may a United States District Court apply admiralty jurisdiction; however, as the Supreme Court held in *Kirby,* absent a valid claim based "directly in maritime transportation", the United States District Court's may not apply admiralty jurisdiction, and any attachment issued under such alleged implication of that jurisdiction, must be vacated.

In considering HECNY's attachment of the OJC Judgment, this Court must review and consider the "nature and character" of the Agreement as a whole.[5]  In this case, there is no admiralty claim because the Agreement between HECNY and HYC is <u>not</u> a maritime contract.  A

---

[5] See, *Kirby*, 543 U.S. at 24-25.

maritime contract only exists where the "principal objective" of the contract relates to navigation, or the operation, repair, and provisioning of a vessel <u>on navigable waters</u>. But this is not the relationship that exists between HECNY and HYC - HECNY makes no such claim that it is. HYC did not provide any services for HECNY when the cargo was enroute on the water. Instead, HYC only began to act once the cargo reached the United States port and then, HYC coordinated logistics and freight forwarding via its trucking lines within the United States. The principal purpose for the Agreement between HECNY and HYC was to establish a non-exclusive commercial agency for business promotion and land-based logistics support, <u>not ocean carriage</u>. *Kirby*, 543 U.S. at 26. (sea component must be "substantial").

None of HYC's activity falls within the broad rubric of a maritime contract and, as such, any claims or disputes that exist between HECNY and HYC fall outside admiralty jurisdiction. HECNY should not be permitted to utilize the extraordinary relief made available to maritime contracts, and the attachment HECNY has issued against the OJC Judgement, should be vacated.

**B. Recitals in the Agreement and Structure Emphasize Non-Maritime Agency**

The recitals made part of the Agreement between HECNY and HYC describe HECNY as a domestic "non-vessel operating common carrier and freight forwarder" and a foreign "freight forwarding company." HYC was retained to "represent, market and sell" services under "mutually beneficial and non-exclusive cooperation" (Agreement Recitals (a)-(f)).

This language clearly and unambiguously creates a domestic agency network for broader business expansion, and <u>not</u> a dedicated sea transport. *Johnson Products Co., Inc. v. M/V La Molinera*, 619 F.Supp. 764 (S.D.N.Y. 1985) (freight forwarder performing a variety of services preliminary to procurement of an actual carrier found lacking admiralty jurisdiction)

HECNY does not dispute that the vast majority of HYC's duties are land-based or administrative: promoting services including customs clearance, trucking, and distribution (Clause

5

1.1 intro); sales/marketing/customer service (c); rate quotations (b); documentation/clearance (d); freight collection/remittance (e); accounting (g); communication acknowledgments (i); claims reporting (j); and confidentiality (k). Maritime duties like collecting B/Ls (a) or issuing with consent (f) are limited and ancillary.

Likewise, HECNY's duties under the Agreement, include advising rates/procedures, sending pre-alerts, acknowledgments, profit calculations, statements and confidentiality - all of which are back-office support rolls and none of which are maritime based activity.  Similarly, the Bills of Lading address separate shipper-carrier relations, not the agent-principal relationship.

And perhaps most important, and dispositive in the instant Motion, is that the alleged claim being asserted by HECNY as the proximate cause of HECNY's damages, is HYC's release of goods in the United States without first securing all of the associated third-party bills of lading. This claim is clearly one exclusively connected to agency and not at all relating to carriage while at sea. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., A Division of Ace Young Inc.,* 109 F.3d 105, 109 (2d Cir.1997) (stating that "mixed" contracts that contain both admiralty and non-admiralty obligations are not within admiralty jurisdiction)

Under *Kirby*, where, as here, the non-maritime elements dominate, classifying the agreement as maritime would federalize business agencies, and a result that, is not warranted.

At the E(4)(f) hearing, HECNY bears the burden of showing reasonable grounds and cannot do so.  Without admiralty jurisdiction, vacatur of the maritime attachment is required. There are no exigent circumstances warranting the attachment and no evidence of asset flight. HYC's presence in the State of Tennessee, since 1948, negates exigency.

In addition, the same claim which HECNY asserts herein against HYC, has already been asserted by HECNY in the pending Western District of Tennessee matter.  There is no need for duplicative security and HECNY should not be permitted to act in this duplicative way.

Finally, courts have explained that even when an attachment is secured in conformity with Rule B, equitable vacatur pursuant to Rule E may nonetheless be in order. Equitable vacatur may be appropriate where the defendant can demonstrate that (i) it is subject to suit in a convenient adjacent jurisdiction; (ii) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or (iii) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise. *Proshipline v. Aspen Infrastructures*, 585 F.3d 105 (2nd Cir. 2009) (equitable vacatur turns not on the owner of attached funds' relationship with the jurisdiction of attachment, but on both parties' relationship with another jurisdiction).

In this case, all of these factors exist as to HYC: HYC is subject to suit in a convenient adjacent jurisdiction - namely, Tennessee, where the case is already pending; (ii) HECNY has obtained *in personam* jurisdiction over HYC in Tennessee; and (iii) HECNY has already obtained sufficient security for the potential judgment, by attachment of HYC's bank account.

The maritime attachment should be VACATED.

**C. In the Alternative, HYC Requests that the Court Reduce Security Under Supplemental Rule E(6)**

In addition to the improper nature of the attachment, the lack of admiralty jurisdiction, the duplicative nature of the security, and the availability of *in personam* jurisdiction over HYC in Tennessee, the attachment is further improper, because the amount which HECNY has claimed substantially exceeds its alleged damages.

As indicated in its own Complaint, HECNY settled the claims asserted by Ningbo Yuanlin for 50% of the claimed amount owed. That claim was $361,695.00 and the matter settled for $153,427.00 (Par. 21). The claim for $723,390.00 is likewise asserted by the very same factory - Ningbo Yuanlin - and those claims too can be settled for 50%, for a total, $361,695.00. As such, HECNY's claim against HYC totals $515,392.00. HECNY has already attached a Texas based

4936-9127-5915, v. 2

bank account of HYC. And yet, HECNY has now attached the OJC Judgement in the amount of $1.3ML. This attachment is entirely excessive relative to the supported claim.

Even where this Court to somehow determine admiralty jurisdiction, and was willing to ignore the duplicative nature of the security, and the availability of *in personam* jurisdiction over HYC in Tennessee, the attachment is still improper, because it should be limited to a claim amount of $515,392.00.

## CONCLUSION

**WHEREFORE**, HYC asserts that the maritime attachment asserted by HECNY against the OJC Judgement, is of an improper nature because there is no admiralty jurisdiction under the contract that exists between the parties because the contract is not maritime in nature. Moreover, the duplicative nature of the security combined with the availability of *in personam* jurisdiction over HYC in Tennessee, renders the maritime attachment further improper. For these reasons, the Court should vacate the maritime attachment.

In the alternative, if the Court were willing to establish admiralty jurisdiction, despite the non-maritime contract, the duplicative nature of the security, and the availability of *in personam* jurisdiction over HYC in Tennessee, the attachment is still improper, because it is excessive. The attachment should be reduced to $515,392.00.

HYC seeks recovery of its attorney's fees and litigation costs incurred in bringing this Motion, and any other relief which the court deems proper.

> Respectfully submitted,
>
> /s/ Mahra C. Sarofsky
> Mahra C. Sarofsky
> FL Bar No. : 33637
> **Lippes Mathias, LLP**
> 4420 Beacon Circle
> West Palm Beach, FL 33407
> 561-842-3000
> msarofsky@lippes.com

4936-9127-5915, v. 2

**GLANKLER BROWN, PLLC**

By: /s/ S. Joshua Kahane
S. Joshua Kahane (TN BPR # 23726) (phv pending)
Yosef Horowitz (TN BPR #36353) (phv pending)
6000 Poplar Avenue, Suite 400
Memphis, TN  38119
(901) 576-1758
jhorowitz@glankler.com
jkahane@glankler.com

*Attorneys for HYC Logistics, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon the following by operation by email:

Adam Cooke
Fowler White Burnett, P.A.
201 South Biscayne Blvd., 20th Floor
Miami, FL 33131
acooke@fowler-white.com

Elliott Tuttle Williams, IV
Lennon, Murphy & Phillips, LLC
1599 Post Road E
Westport, CT 06880
elliott.williams@lmplaw.net

Patrick F. Lennon
Lennon, Murphy & Phillips, LLC
1599 Post Road E
Westport, CT 06880
plennon@lmplaw.net

/s/   Mahra Sarofsky
Mahra Sarofsky