UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-26028-CIV-COHN

HECNY SHIPPING LTD.,

        Plaintiff,

VS.

HYC LOGISTICS, INC.,

        Defendant.

_____/

## ORDER DENYING MOTION TO VACATE ATTACHMENT OR REDUCE SECURITY

**THIS CAUSE** is before the Court on Defendant HYC Logistics, Inc.'s Motion to

Vacate *Ex Parte* Maritime Attachment or, in the Alternative, to Reduce Security [DE 9]

("Motion"). The Court has carefully considered the Motion, Plaintiff's Response [DE 22],

Defendant's Reply [DE 31], the parties' arguments at the March 31, 2026 hearing on the

Motion, the record in this case, and is otherwise advised in the premises. For the

reasons set forth below, Defendant's Motion is denied.

### I.    Background

Plaintiff Hecny Shipping Limited is a Hong Kong-based Federal Maritime

Commission registered non-vehicle operating common carrier ("NVOCC") that is

engaged in international commerce involving the ocean transportation of cargo. DE 1 ¶

3. Defendant HYC Logistics, Inc. is a Tennessee-based freight forwarder and delivery

agent, who Plaintiff claims is registered with the Federal Maritime Commission as an

"ocean transportation intermediary." DE 22 at 3.

Pursuant to the parties' Sea Freight Non-exclusive Agency Agreement (the

"Agreement"), Defendant, acting as Plaintiff's agent, was responsible for fulfilling

Plaintiff's obligations under bills of lading that coordinated the shipment of goods from China to the United States. See DE 1 ¶ 5, 8. Plaintiff alleges Defendant breached the Agreement when it facilitated the transport of goods from textile manufacturers and shippers Detail Fashion Limited ("DFL"), Ningbo Yuanlin Textile Co., Ltd. ("NYT"), Nantong Chengjia, Shanghai Suxiao, and Dongyang Pate New Material to non-party Louise Paris Ltd. ("Louise Paris"). Id. ¶ 8. Specifically, Defendant should have obtained Plaintiff's original bills of lading from the shippers before delivering the goods to Louise Paris, but failed to do so. Id. ¶ 9. Surrender of the bills of lading confirms the recipient of the goods has paid in full. DE 22 at 2. Louise Paris failed to pay in full for the goods and as a result, Plaintiff was sued by DFL and NYT in China, so that DFL and NYT can recover the amounts that Louise Paris should have paid for the goods. DE 1 ¶ 10-11. Plaintiff contends that, as result of Defendant's alleged breach, it has been, and continues to be damaged in an amount no less than $1,300,000.00. Id. ¶ 26.

Plaintiff filed three lawsuits seeking compensation for its alleged injuries. First, in September 2024, Plaintiff sued Defendant in the Western District of Tennessee for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, and judgment declaring that, *inter alia*, Defendant is obligated to defend and indemnify Plaintiff and hold harmless for any and all claims asserted by any of the aforementioned shippers. Hecny Shipping Limited v. HYC Logistics, Inc., No. 25-cv-02499, Compl. [DE 1] filed Sept. 16, 2024 (W.D. Tenn. 2024).

Next, in July 2025, Plaintiff filed another complaint against Defendant for Breach of Maritime Contract in the Southern District of Texas for the sole purpose of obtaining pre-judgment security for its claims against Defendant in the Western District of

Tennessee. See Hecny Shipping Limited v. HYC Logistics, Inc., Case No. 25-cv-03143, Compl [DE 1] filed July 7, 2025 (S.D. Tex. 2025). After the court authorized attachment and garnishment of Defendant's property in the district, Simmons Bank garnished $8,108.14 of Defendant's funds, which are presently being held by the bank pending the resolution of the Tennessee action. See DE 1 at 7 n.1.

Finally, in December 2025, Plaintiff sued Defendant in this district for Breach of Maritime Contract, again seeking attachment and garnishment of Defendant's property as pre-judgment security for its alleged damages in the Tennessee litigation. See id. ¶ 45. This Court authorized attachment and garnishment of Defendant's property in this district up to $1,291,892.86, specifically Defendant's property in the possession, custody, or control of OJ Commerce LLC ("OJ Commerce") and other unnamed garnishees. DE 6. Defendant then filed the instant Motion to Vacate Ex Parte Maritime Attachment and Garnishment, or in the Alternative, Reduce Security. DE 9. The motion included a request for a hearing, which the Court held on March 31, 2026. See DE 39.

## II.      Legal Standard

Rule B of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rule B") allows the court to authorize attachment and garnishment of a defendant's property when it appears that the defendant cannot be found within the district where suit is filed and the property is held by garnishees that can be found within the district. See Fed. R. Civ. P. Adm. Supp. R. B(1)(a)-(b). Under Rule E(4)(f) of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rule E"), "[w]henever property is arrested or attached, any person claiming an interest in it" can challenge the

validity of an attachment and is entitled to a hearing. Fed. R. Civ. P. Adm. Supp. R. E(4)(f).

At a Supplemental Rule E hearing, the plaintiff must prove there were reasonable grounds for issuing the attachment. Buesking v. Aloschi Bros. SRL, No. 25-20454-CIV, 2025 WL 2222827, at *2 (S.D. Fla. Aug. 5, 2025) (citation omitted). If the plaintiff fails to meet this burden, the court must vacate the attachment. Denali Shipping LP v. Van Oil Petroleum Ltd., No. 18-22364-CIV, 2018 WL 7820217, at *3 (S.D. Fla. Aug. 31, 2018) (citation omitted). During the hearing, the Court must view the evidence in the light most favorable to Defendant and focus on the facts known at the time of the attachment. See Buesking, 2025 WL 2222827, at *2 (citations omitted). If the plaintiff establishes the attachment was reasonable, an interested party may establish equitable grounds for vacatur. Id. (citation omitted).

**III.    Discussion**

A.  Plaintiff Has Shown Reasonable Grounds Existed for the Attachment

The Court finds that Plaintiff has met its burden of showing there were reasonable grounds for issuing the attachment. To prove reasonable grounds existed, Plaintiff must show: (1) it has a valid prima facie claim, cognizable in admiralty, against Defendant; (2) Defendant cannot be found within the district; (3) Defendant's property may be found in the district; and (4) there is no statutory or maritime bar to attachment. Buesking, 2025 WL 2222827, at *3. During the Supplemental Rule E hearing, Defendant conceded that Plaintiff can show elements two and four are satisfied. Therefore, the Court's analysis will focus on the remaining two elements.

4

Defendant argues Plaintiff failed to make a prima facie admiralty claim because the Agreement allegedly breached by Defendant is not a maritime contract, as it does not "directly pertain to maritime commerce, i.e. the handling of goods shipped by sea." See DE 9 at 2. Instead, Defendant contends "the principal purpose for the Agreement between [the parties] was to establish a non-exclusive commercial agency for business promotion and land-based logistics support, not ocean carriage." Id. at 5. Plaintiff counters that "though [Defendant's] contractual obligations were primarily limited to the ports of discharge, such obligations were fundamental in the context of the shipments of goods from China to the United States." DE 22 at 11. Plaintiff contends the core functions delegated to Defendant under the Agreement are the functions Plaintiff would otherwise be obligated to perform as an NVOCC under the maritime bills of lading, and as a result, the Agreement's primary objective is to facilitate maritime commerce. See id. at 8, 12.

Whether the Agreement is a maritime contract "depends upon . . . the nature and character of the contract." See Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 24 (2004). "[S]o long as a contract requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce—and thus it is a maritime contract. Its character as a maritime contract is not defeated simply because it also provides for some land carriage." Id. at 27. If an agreement's sea components are insubstantial, however, then the agreement is not a maritime contract. Id.

In looking at the Agreement as a whole, the Court is convinced the Agreement's primary focus is to effectuate maritime commerce. The responsibilities delegated to Defendant, such as arranging customs clearance and issuing bills of lading on Plaintiff's

behalf, see DE 1-3 at 3-4, are integral to the overseas transport of cargo. Also, the title of the Agreement, "Sea Freight Non-exclusive Agency Agreement," is further evidence that the Agreement requires the substantial carriage of goods by sea. As such, this Court concludes the Agreement is a maritime contract and, therefore, Plaintiff stated a prima facie admiralty claim.

Defendant next argues that Plaintiff failed to show Defendant's property may be found in this district. Specifically, Defendant and garnishee OJ Commerce contend that because execution of the judgments declaring OJ Commerce indebted to Defendant were stayed by the Tennessee district court pending appeal and a supersedeas bond was posted with that court, the damages OJ Commerce was ordered to pay to Defendant cannot be subject to attachment. See DE 17 at 5. However, this Court's inquiry must focus on the facts known at the time of attachment,[1] see Buesking, 2025 WL 2222827, at *2 (citations omitted), and at that time, the supersedeas bond had not been approved and the Western District of Tennessee's stay was not in effect. A Notice of Appeal was filed, but that generally does not prevent another party from executing on a judgement. See Arvest Bank v. Byrd, No. 10-2004, 2012 WL 5512376, at *1 (W.D. Tenn. Nov. 14, 2012) (concluding the defendants, who filed a Notice of Appeal, were not entitled to a stay of proceedings in aid of execution of judgment); Smith & Nephew, Inc. v. Synthes (U.S.A.), No. 02-2873 MA/A, 2007 WL 9706817, at *6 (W.D. Tenn. Nov. 27, 2007) (explaining that when a Notice of Appeal is filed, a district court loses its jurisdiction to expand upon its rulings or orders that are being appealed, but retains

---

[1] Property is attached at the time the writ of attachment and garnishment is served. See Dorsett v. Carib-USA Ship Lines, Bahamas Ltd., No. 06-80977-CIV, 2007 WL 9701874, at *3 (S.D. Fla. Feb. 21, 2007) (focusing inquiry on whether to vacate Supplemental Rule B attachment on date the writ was served); Clipper Shipping Co. v. Unimarine Bulk Transp., Inc., 790 F. Supp. 56, 61 (D. Conn. 1992) (same).

jurisdiction to enforce prior judgments). As such, the Court concludes Plaintiff satisfied its burden of proving that there were reasonable grounds for issuing the writ of attachment.

### B.  Defendant Fails to Show Equitable Vacatur is Warranted

Defendant argues that, even if the Courts concludes the attachment was reasonable, equitable vacatur is appropriate here. The Court does not agree.

Equitable vacatur may be appropriate when (1) the defendant is subject to suit in a convenient adjacent jurisdiction; (2) the plaintiff could obtain personal jurisdiction over the defendant in the district where the plaintiff is located; or (3) the plaintiff has obtained sufficient security for the potential judgment. Buesking, 2025 WL 2222827, at *2 (citing Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 444 (2d Cir. 2006), abrogated on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009)).

First, Defendant argues equitable vacatur is appropriate because it is subject to suit in the Western District of Tennessee. DE 9 at 7. However, consistent with Aqua Stoli, other courts have narrowly construed the definition of "convenient adjacent jurisdiction" to mean a jurisdiction geographically adjacent to the current district. Aqua Stoli, 460 F.3d at 444. The "paradigmatic example" is an "across the river" example where "assets are attached in the Eastern District [of New York] but the defendant is located in the Southern District [of New York]." Id. As the Western District of Tennessee is not geographically adjacent to the Southern District of Florida, it is not a convenient adjacent jurisdiction and the Court declines to grant equitable vacatur on this basis.

Next, Defendant argues the Court should vacate the attachment on equitable grounds because "[Plaintiff] has obtained *in personam* jurisdiction over [the Defendant] in Tennessee." DE 9 at 7. In making this argument, Defendant misunderstands the legal standard, which states vacatur may be appropriate "where the plaintiff could obtain personal jurisdiction over the defendant in the district <u>where the plaintiff is located</u>." <u>Buesking</u>, 2025 WL 2222827, at *2 (emphasis added). Plaintiff is a Chinese company with its principal place of business in Hong Kong. DE 1 ¶ 3. Personal jurisdiction over Defendant in Tennessee would not weigh in favor of vacatur, as the purpose of a Supplement Rule B attachment is "first, to gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment" through attaching the defendant's property in other districts. <u>See</u> <u>World Wide Supply OU v. Quail Cruises Ship Mgmt.</u>, 802 F.3d 1255, 1261 (11th Cir. 2015) (citation omitted).

Finally, Defendant argues equitable vacatur is warranted here because Plaintiff has obtained pre-judgment security for the Tennessee litigation in excess of its claimed damages. DE 9 at 7-8. Defendant argues that although Plaintiff claims it is potentially liable for $723,390.55 in damages in the 2025 litigation with NYT, Plaintiff will be able to settle those claims for half that amount. <u>Id.</u> at 7. However, as Plaintiff highlights, there is no guarantee that the 2025 NYT claims will settle for $361,695.00. Settlement negotiations are ongoing. DE 22 at 12-13.

Upon review of the amounts secured by Plaintiff so far, the Court concludes Plaintiff has not obtained sufficient pre-judgment security for the Tennessee litigation. Plaintiff claims damages of at least $1,303,735.05. DE 22 at 5. Only $8,108.14 was available in

the Southern District of Texas and Plaintiff secured $1,291,892.86 through this district, for a total of $1,300,001.00. Ultimately, equitable vacatur is not warranted here.

### C. Staying Garnishment Proceedings is Appropriate

OJ Commerce contends that under Florida law, the judgments were entered against it in HYC Logistics, Inc. v. OJCommerce, LLC, et al., Case No. 23-cv-02050 (W.D. Tenn. 2023) are not subject to attachment because "judgments may not be garnished until a judgment becomes final and is no longer subject to appeal." DE 17 at 5 (quoting Rossi v. Billmyre, No. 215CV180FTM29MRM, 2017 WL 2869412, at *3 (M.D. Fla. July 5, 2017)). Plaintiff does not dispute that state law applies to this issue. In any event, applying state law is consistent with Supplemental Rule B, which explains that Plaintiff may invoke state-law remedies under Federal Rule of Civil Procedure 64. See Fed. R. Civ. P. Adm. Supp. R. (B)(1)(e). Rule 64 states, "At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment," including attachment and garnishment. Fed. R. Civ. P. 64(a)-(b).

The Court agrees that under Florida law, the funds used to post a supersedeas bond are only subject to garnishment after the judgment becomes final and is no longer subject to appeal. Rossi, 2017 WL 2869412, at *3. However, Plaintiff's motion for attachment and garnishment was granted before OJ Commerce's supersedeas bond in HYC Logistics, Inc. v. OJCommerce, LLC, et al. was approved and those proceedings were stayed pending appeal. While perfecting a supersedes bond stays further

proceedings, it "does not interfere with what has already been done." Thalheim v. Camp Phosphate Co., 48 Fla. 190 (1904). Therefore, to avoid execution of judgments currently under appeal, this Court will stay garnishment proceedings without dissolving the writ of attachment and garnishment. Accordingly, it is

> **ORDERED and ADJUDGED** as follows:

1. Defendant's Motion to Vacate *Ex Parte* Maritime Attachment or, in the Alternative, to Reduce Security [DE 9] is **DENIED.**

2. Garnishment proceedings in this case shall be **STAYED** pending further Order of the Court.

> **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 2nd day of April, 2026.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF

10